AO 442 (Rev 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Michigan

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
11:16 am, Mar 10, 2022
**JEFFREY P. COLWELL, CLERK**

United States of America

v.

Taylor McLaren
*Defendant*

)
)
)
)
)
)

**Colorado Case: 22-mj-00038-MEH**

Case No.   1:22-cr-29

Hon. Robert J. Jonker
Chief United States District Judge

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* _____ Taylor McLaren _____ ,

who is accused of an offense or violation based on the following document filed with the court:

☒ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☐ Complaint
☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:
   Conspiracy to Smuggle Goods into the United States in violation of 18 U.S.C. § 371

Date:   03/02/2022               Deputy Clerk

City and state:   Grand Rapids, Michigan                    Phillip J. Green, United States Magistrate Judge
                                                            *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* March 10, 2022 , and the person was arrested on *(date)* March 10, 2022 at *(city and state)* Colorado Springs, Colorado . |

Date:   3/10/2022

_____
*Arresting officer's signature*

Courtney Ludwig United States Postal Inspector
*Printed name and title*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

       vs.

BRENDON GAGNE,
JAMES FUNARO,
JEREMY WALENTY,
TAYLOR McLAREN, and
JOSHUA FORD,

               Defendants.

**INDICTMENT**

_____/

     The Grand Jury charges:

## **INTRODUCTION**

     At all times relevant to this Indictment:

### *Defendants and Related Individuals and Entities*

     1.    BRENDON GAGNE was a resident of Fountain, Colorado, where he was active in the bodybuilding community.

     2.    JAMES FUNARO was a resident of Atlanta, Georgia.  JAMES FUNARO owned Valiant Capital Partners, LLC, a domestic limited liability company registered in the State of New York, and was a former Mixed Martial Arts ("MMA") fighter.

     3.    JEREMY WALENTY was a resident of Tampa, Florida.

     4.    TAYLOR McLAREN was a resident of Colorado Springs, Colorado, and was a competitive bodybuilder.

5.     JOSHUA FORD was a resident of Troy, Michigan, where he was active in the bodybuilding community.

6.     J.G. was a resident of Miami, Florida

7.     R.L. was a resident of Boulder, Colorado, where he was active in the bodybuilding community.

8.     P.L. was a resident of Boulder, Colorado, where he was active in the bodybuilding community.

9.     T.M. was a resident of Muskegon, Michigan, and was a competitive bodybuilder.

10.    M.H. was a resident of Muskegon, Michigan.

11.    www.ExpressPCT.com was a publicly accessible website that sold various prescription drugs as well as scheduled controlled substances to customers in the United States without requiring a prescription to be provided by the purchaser. Among others, www.ExpressPCT.com sold prescription drugs that were manufactured outside of the United States, including in India.

12.    www.ExpressPEDS.ws was a publicly accessible website that sold various prescription drugs as well as Schedule III anabolic steroids.

13.    www.PayAnyWayExchange.com was a publicly accessible payment processing site that provided customers of www.ExpressPCT.com with various methods of payment for the purchase of products sold on www.ExpressPCT.com, including but not necessarily limited to wire transfer, eCheck, Zelle, Google Pay, Skrill, Xoom, and Cash App.

2

14.    Valiant Capital Partners LLC, was a domestic limited liability company registered in the State of New York that received payments for prescription drugs purchased on www.ExpressPCT.com.

*The Food and Drug Administration's Regulation of Drugs*

15.    The United States Food and Drug Administration ("FDA") was the agency responsible for protecting the health and safety of the American public by enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA"). One of the main purposes of the FDCA was to ensure that drugs sold for human use were safe, effective, and have labels containing only true and accurate information. The FDA's responsibilities under the FDCA included, but were not limited to, regulating the manufacturing, labeling, and distribution of prescription drugs shipped or received in interstate commerce.

16.    Drugs were defined as articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man and also included articles intended to affect the structure or any function of the human body.

17.    Prescription drugs were drugs that, because of their toxicity and other potential harmful effects, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs. A drug was also a "prescription drug" if the FDA required it to be administered under the supervision of a practitioner licensed by law to administer such a drug as a condition of the FDA's approval of the drug.

18.     Under the FDCA, a prescription drug could not lawfully be dispensed without a valid prescription written by a licensed practitioner.

19.     The FDCA prohibited the introduction into interstate commerce of any drug that was misbranded. A drug was misbranded if, among other things, it was dispensed without a written prescription of a practitioner licensed by law to administer such a drug.

*Drug Smuggling Scheme*

20.     Customers could visit www.ExpressPCT.com and place an order for various prescription drugs. The website broke down the items for sale into four categories based upon where the products ship from or to, including a category labeled "USA Products" for pharmaceuticals only available for purchase by customers in the United States. Additionally, the "USA Products" category offered three-day shipping via the United States Postal Service ("USPS").

21.     The "USA Products" page listed prescription drugs, under various brand names, for sale, including but not limited to, Letrozole, isotretinoin, arimidex, exemestane, cabergoline, tadalafil citrate, clomiphene citrate, modafinil, tamoxifen citrate, human chorionic gonadotropin, and sildenafil citrate. Several of these drugs were used to treat the short-term adverse effects of anabolic steroid use.

22.     In order to obtain the drugs sold on www.ExpressPCT.com legally in the United States, a person must have obtained a valid written prescription from a licensed medical practitioner. However, www.ExpressPCT.com did not require a customer to provide a prescription to purchase any of the drugs from its website.

4

23. www.ExpressPCT.com was affiliated with the website www.ExpressPEDS.ws, which sold anabolic-androgenic steroids, among other things. www.ExpressPEDS.ws also did not require a customer to provide a prescription to purchase any of the drugs from its website.

24. The prescription drugs sold on www.ExpressPCT.com and www.ExpressPEDS.ws were manufactured largely, if not entirely, outside of the United States. The drugs were then shipped, in bulk form, to individual distributors in the United States. To conceal the nature of the drugs contained in these bulk shipments, the customs declarations forms included false statements as to what was actually contained in the packages. In some cases, the drugs themselves were actually packaged in boxes normally used to ship non-drug items, such as cosmetics, before being shipped to the United States.

25. Once the bulk shipments were received in the United States, the individual distributors broke down the bulk shipments still further and then sent these smaller bulk shipments to other individual re-distributors elsewhere in the United States.

26. Once the re-distributors received the shipments of prescription drugs, they then re-packaged them, applied a USPS shipping label to the outside of the package, and sent the drugs to the customer who had placed an order on www.ExpressPCT.com. The box and the label were designed in such a way as to make the customers think the drugs came from the United States and not from overseas.

*Money Laundering Scheme*

27.  www.ExpressPCT.com accepted Bitcoin, a type of cryptocurrency, directly as one method of payment for the prescription drugs. Additionally, the website accepted alternative forms of payment, including payments sent via digital payment networks such as Zelle and Cash App.

28.  If a customer of www.ExpressPCT.com elected to pay using an alternative form of payment, rather than Bitcoin or another form of cryptocurrency, they were directed to www.PayAnyWayExchange.com to process payments.

29.  When a customer chose to pay via wire transfer, Western Union, or digital payment network such as Zelle or Xoom, www.PayAnyWayExchange.com instructed them to list the recipient of their payment as valiantcapitalone@gmail.com. For funds sent via Zelle specifically, the website also suggested that customers use the name JAMES FUNARO if necessary to transfer the required funds.

30.  More recently, customers were offered the option to pay via Cash App rather than via Zelle by sending funds to "$valiantcap" and/or "$james2774".

31.  In all instances, www.PayAnyWayExchange.com instructed customers not to include any words, names, or other specific information related to the drugs ordered on www.ExpressPCT.com.

32.  Funds sent to valiantcapitalone@gmail.com, "$valiantcap," and "$james2774" were ultimately routed to bank accounts in the name of Valiant Capital

Partners, LLC, a company owned by JAMES FUNARO, or to accounts in the name of JAMES FUNARO directly.

33.     Ultimately, customer funds were then routed to accounts in JAMES FUNARO's name with Gemini Trust Company, LLC and Coinbase, Inc., digital currency exchanges and custodians that allowed customers to buy, sell, and store digital currencies, including Bitcoin. The funds were then converted to cryptocurrency and moved to accounts held by foreign nationals residing overseas and to other unknown locations.

34.     Once the funds were moved overseas, co-conspirators used them to pay the foreign suppliers of the prescription drugs in order to obtain additional supplies of drugs and further the smuggling scheme. Co-conspirators also used funds to pay re-distributors for their participation in the scheme.

## COUNT 1
### (Conspiracy to Smuggle Goods into the United States)

The Grand Jury realleges and incorporates by reference the allegations made in Paragraphs 1-34 of the Introduction above as if fully set forth herein.

Beginning in or about September 2018 and continuing until in or about October 2021, in Muskegon County, in the Southern Division of the Western District of Michigan, and elsewhere, the defendants,

**BRENDON GAGNE,
JAMES FUNARO,
JEREMY WALENTY,
TAYLOR McLAREN, and
JOSHUA FORD,**

and others both known and unknown to the Grand Jury, including but not limited to R.L., P.L., J.G., T.M., and M.H., knowingly and fraudulently combined, conspired, confederated, and agreed with each other to smuggle goods into the United States contrary to law, in violation of Title 18, United States Code, Section 545, namely misbranded prescription drugs and controlled substances, in violation of Title 21, United States Code, Sections 331 and 841.

The object of the conspiracy was to import unapproved foreign manufactured prescription drugs and controlled anabolic steroids into the United States.

### MANNER AND MEANS

In order to effectuate the objects of the conspiracy, the defendants used means, facilities, and instrumentalities of interstate commerce, including telephones, internet-connected social media platforms, email accounts, and publicly accessible

websites. The defendants also made extensive use of the United States Postal Service and the United States Mail.

OVERT ACTS

In furtherance of the conspiracy, and to effectuate its illegal object, the conspirators committed the following overt acts, among others, both in the Western District of Michigan and elsewhere:

1.      In or about September 16, 2018, co-conspirators established the website www.ExpressPCT.com, offering for sale prescription drugs obtained from overseas pharmaceutical companies without requiring the purchaser to produce a written prescription.

2.      In or about March 31, 2020, co-conspirators established the website www.ExpressPEDS.ws, offering for sale prescription drugs and anabolic steroids without requiring the purchaser to produce a written prescription.

3.      Sometime prior to February 2019, BRENDON GAGNE recruited R.L. to serve as a re-distributor of prescription drugs purchased on www.ExpressPCT.com.

4.      On or about October 14, 2019, during a conversation on Discord, BRENDON GAGNE stated to another user that his username/handle on Wickr was "ariajacobs" so that the other user could place an order for prescription drugs.

5.      Sometime prior to December 2019, BRENDON GAGNE recruited P.L. to serve as a re-distributor of prescription drugs purchased on www.ExpressPCT.com.

6.      Sometime prior to March 2020, BRENDON GAGNE recruited JEREMY WALENTY to serve as a re-distributor of prescription drugs purchased on www.ExpressPCT.com.

7.      On or about March 3, 2020, JEREMY WALENTY had a conversation on www.ExpressPCT.com's live chat feature with a customer in which WALENTY explained how the website would address situations in which a customer had his or her prescription drugs seized by government officials prior to delivery.

8.      Sometime prior to November 2019, one or more of the conspirators recruited J.G. to serve as a re-distributor of prescription drugs purchased on www.ExpressPCT.com.

9.      Beginning in or about February 2019 and continuing until approximately December 2019, co-conspirators outside the United States sent BRENDON GAGNE approximately 22 packages that contained bulk quantities of prescription drugs available for purchase on www.ExpressPCT.com.

10.      In or about January 2019 and continuing until approximately August 2019, co-conspirators outside the United States sent JEREMY WALENTY approximately 9 packages that contained bulk quantities of prescription drugs available for purchase on www.ExpressPCT.com.

11.      In or about February 2020 and continuing until approximately March 2020, co-conspirators outside the United States sent TAYLOR McLAREN approximately 3 packages that contained bulk quantities of prescription drugs available for purchase on www.ExpressPCT.com.

10

12.     In or about November 2019 and continuing until approximately October 2020, co-conspirators outside the United States sent J.G. approximately 4 packages that contained bulk quantities of prescription drugs available for purchase on www.ExpressPCT.com.

13.     In or about February 2020 and continuing until approximately March 2020, co-conspirators outside the United States sent JOSHUA FORD approximately 4 packages that contained bulk quantities of prescription drugs available for purchase on www.ExpressPCT.com.

14.     In or about February 2019 and continuing until approximately October 2020, co-conspirators outside the United States sent R.L. approximately 11 packages that contained bulk quantities of prescription drugs available for purchase on www.ExpressPCT.com.

15.     In or about December 2019 and continuing until approximately November 2020, co-conspirators outside the United States sent P.L. approximately 4 packages that contained bulk quantities of prescription drugs available for purchase on www.ExpressPCT.com.

16.     On or about February 5, 2020, TAYLOR McLAREN used his Instagram account to recruit T.M. to serve as a re-distributor of prescription drugs. During the conversation, McLAREN told T.M. that the person running the scheme was his friend and used the Wickr username/handle "ariajacobs.".

17.     T.M. subsequently recruited M.H. to assist him in his re-distribution efforts.

18.     On or about February 6, 2020, M.H. opened a cryptocurrency account with Coinbase for the purpose of receiving payments in Bitcoin for M.H. and T.M.'s participation in the scheme.

19.     Between approximately February 15, 2020, and September 20, 2020, co-conspirators outside of the United States sent T.M. and M.H. approximately 12 packages that contained bulk quantities of prescription drugs available for purchase on www.ExpressPCT.com.

20.     Between December 2019 and April 2020, BRENDON GAGNE obtained approximately 580 Priority Mail envelopes from the United States Postal Service.

21.     Between February 2020 and September 2020, JEREMY WALENTY obtained approximately 700 Priority Mail boxes and 1,900 Priority Mail envelopes from the United States Postal Service.

22.     On or about October 13, 2020, J.G. obtained approximately 100 Priority Mail boxes and 840 Priority Mail envelopes from the United States Postal Service.

23.     Between February 2020 and October 2020, T.M. and M.H. obtained approximately 40 Priority Mail boxes and 370 Priority Mail envelopes from the United States Postal Service.

24.     On or about July 22, 2020, a co-conspirator sent an email to T.M. and M.H. outlining the process to be used when dividing bulk shipments of prescription drugs into smaller orders for reshipment, including instructions about printing USPS labels and postage and how to package the drugs. The email specifically indicated "it is not fully legal shipping these types of products all across the country."

25.     Between approximately July 2020 and October 2020, the same co-conspirator sent T.M. and M.H. approximately 34 emails containing the names of customers and the types and quantities of prescription drug orders as well as a link to pre-filled and pre-paid USPS labels to the same customers.

26.     In or about August 2020, R.L. sent T.M. and M.H. a shipment of prescription drugs. The conspirators had concealed some of the drugs inside boxes that purported to contain beauty products and specifically instructed the recipients not to use the products if the seal on the box had been broken.

27.     Between approximately July 24, 2020, and October 11, 2020, T.M. and M.H. mailed approximately 430 shipments of prescription drugs available on www.ExpressPCT.com to either other re-distributors or customers of www.ExpressPCT.com located in the United States.

28.     Between approximately January 8, 2020, and October 19, 2020, JEREMY WALENTY mailed approximately 1,800 shipments of prescription drugs available on www.ExpressPCT.com to either other re-distributors or customers of www.ExpressPCT.com located in the United States.

29.     On or about June 5, 2020, T.M. and M.H. mailed a USPS Priority Mail box from Muskegon, Michigan, to JEREMY WALENTY in Tampa, Florida. The box contained prescription drugs purchased on www.ExpressPCT.com.

30.     On or about June 22, 2020, T.M. and M.H. mailed a USPS Priority Mail box from Muskegon, Michigan, to BRENDON GAGNE in Colorado Springs, Colorado. The box contained prescription drugs purchased on www.ExpressPCT.com.

31.     On or about June 29, 2020, T.M. and M.H. mailed a USPS Priority Mail box from Muskegon, Michigan, to defendant BRENDON GAGNE's girlfriend in Colorado Springs, Colorado. The box contained prescription drugs purchased on www.ExpressPCT.com.

32.     On or about July 13, 2020, R.L. mailed a USPS Priority Mail box from Boulder, Colorado, to JEREMY WALENTY in Tampa, Florida. The USPS delivered the box to JEREMY WALENTY on or about July 15, 2020.

33.     On or about November 7, 2020, R.L. mailed a USPS Priority Mail box from Boulder, Colorado, to JEREMY WALENTY in Tampa, Florida. The box contained approximately 260 tablets of Tadalafil, 10 tablets of Armodafinil (a Schedule IV controlled substance), and 160 tablets of Modafinil (a Schedule IV controlled substance) — all prescription drugs available for purchase on www.ExpressPCT.com.

34.     In or about September 2020, customer M.W. ordered prescription Clomid and Arimidex on www.ExpressPCT.com. After M.W. placed the order, a co-conspirator emailed T.M. and M.H. with instructions to fulfill the order. T.M. and M.H. then sent the order to M.W. via the USPS. At the same time, M.W. sent payment for the order to an account at Skrill USA, Inc., a digital wallet provider. The funds were subsequently transferred to a bank account owned by JAMES FUNARO.

35.     On or about December 18, 2020, JAMES FUNARO had a conversation via Facebook messenger with J.R., a repeat customer of www.ExpressPCT.com, who was seeking to purchase prescription drugs.

36.     In or about February 2021, JAMES FUNARO had a conversation via
email with a customer of www.ExpressPCT.com about fulfilling an order for
prescription drugs and processing payment for the purchase.

18 U.S.C. § 371
18 U.S.C. § 545

## COUNT 2
### (Money Laundering Conspiracy)

The Grand Jury realleges and incorporates by reference the allegations made in Paragraphs 1-34 of the Introduction above as if fully set forth herein.

From in or about September 2018 and continuing until in or about October 2021, in the Southern Division of the Western District of Michigan, and elsewhere, the defendants,

### JAMES FUNARO
### and
### BRENDON GAGNE,

knowingly combined, conspired, confederated, and agreed with each other and with others both known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, namely:

(a)   to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, smuggling goods into the United States with the intent to promote the carrying on of specified unlawful activity, that is, smuggling goods into the United States, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b)   to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions

involved the proceeds of specified unlawful activity, that is, smuggling goods into the United States, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)

**COUNT 3**
**(Money Laundering)**

The Grand Jury realleges and incorporates by reference the allegations made in Paragraphs 1-34 of the Introduction and Paragraphs 1-36 of Count 1 above as if fully set forth herein.

On or about September 3, 2020, in the Southern Division of the Western District of Michigan, the defendant,

**JAMES FUNARO,**

knowingly conducted and attempted to conduct a financial transaction affecting interstate and foreign commerce, namely a transfer of funds to pay for prescription drugs purchased on www.ExpressPCT.com, which involved the proceeds of a specified unlawful activity, that is, smuggling goods into the United States,

(a)  with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

(b)  knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity;

18

and aided, abetted, counseled, commanded, induced, and procured the same.

18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2

## FORFEITURE ALLEGATION
### (Conspiracy to Smuggle Goods into the United States)

The allegations contained in Count 1 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(2)(B).

Pursuant to 18 U.S.C. § 982(a)(2)(B), upon conviction of a conspiracy to violate 18 U.S.C. § 545, in violation of 18 U.S.C. § 371, as set forth in Count 1 of this Indictment, the defendants,

**BRENDON GAGNE,
JAMES FUNARO,
JEREMY WALENTY,
TAYLOR McLAREN, and
JOSHUA FORD,**

shall forfeit to the United States of America any property constituting, or derived from, proceeds the person obtained directly or indirectly as the result of the offense charged in Count 1. The property to be forfeited includes, but is not limited to, the following:

1.    MONEY JUDGMENT: A sum of money equal to at least $12 million, which represents the proceeds traceable to the offense.

2.    PERSONAL PROPERTY:

a.    a 2012 Maserati Granturismo with VIN ZAM45KLA5C0063730;

b.    a 2014 BMW 428 with VIN WBA3N5C50EF715865.

3.    SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be

divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 982(a)(2)(B)
18 U.S.C. § 982(b)(1)
21 U.S.C. § 853(p)
18 U.S.C. § 371
18 U.S.C. § 545

## FORFEITURE ALLEGATION
### (Money Laundering Conspiracy)

The allegations contained in Count 2 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of an offense in violation of 18 U.S.C. § 1956 set forth in Count 2 of this Indictment, the defendants,

**JAMES FUNARO**
**and**
**BRENDON GAGNE,**

shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

1. MONEY JUDGMENT: A sum of money equal to at least $12 million, which represents the amount of money involved in the offense charged in Count 2.

2. SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be

        divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b).

18 U.S.C. § 982(a)(1)
21 U.S.C. § 853(p)
18 U.S.C. § 982(b)
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(a)(1)(B)(i)

A TRUE BILL

_____
GRAND JURY FOREPERSON

ANDREW BYERLY BIRGE
United States Attorney

_____
STEPHANIE M. CAROWAN
JUSTIN M. PRESANT
Assistant United States Attorneys

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.            INDICTMENT
             **PENALTY SHEET**

BRENDON GAGNE,
JAMES FUNARO,
JEREMY WALENTY,
TAYLOR McLAREN, and
JOSHUA FORD,

   Defendants.
_____/

**BRENDON GAGNE:**

 **COUNT 1 – Conspiracy to Smuggle Goods into the United States – 18 U.S.C. §§ 371, 545**

  **Penalty:** Not more than 5 years in prison and/or a $250,000 fine [18 U.S.C. § 371]
  **Supervised Release:** Not more than 3 years [18 U.S.C. § 3583]
  **Special Assessment**: $100 [18 U.S.C. § 3013]

 **COUNT 2 – Money Laundering Conspiracy – 18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), and 1956(a)(1)(B)(i)**

  **Penalty:** Not more than 20 years in prison and/or a fine of up to either $500,000 or twice the value of the property or funds involved in the transaction, whichever is greater  [18 U.S.C. § 1956(a)]
  **Supervised Release:** Not more than 3 years [18 U.S.C. § 3583]
  **Special Assessment**: $100 [18 U.S.C. § 3013]

 **FORFEITURE ALLEGATIONS**

**JAMES FUNARO**:

### COUNT 1 – Conspiracy to Smuggle Goods into the United States – 18 U.S.C. §§ 371, 545

**Penalty:** Not more than 5 years in prison and/or a $250,000 fine [18 U.S.C. § 371]
**Supervised Release:** Not more than 3 years [18 U.S.C. § 3583]
**Special Assessment**: $100 [18 U.S.C. § 3013]

### COUNT 2 – Money Laundering Conspiracy – 18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), and 1956(a)(1)(B)(i)

**Penalty:** Not more than 20 years in prison and/or a fine of up to either $500,000 or twice the value of the property or funds involved in the transaction, whichever is greater  [18 U.S.C. § 1956(a)]
**Supervised Release:** Not more than 3 years [18 U.S.C. § 3583]
**Special Assessment**: $100 [18 U.S.C. § 3013]

### COUNT 3 – Money Laundering – 18 U.S.C. §§ 1956(a)(1)(A)(i), and 1956(a)(1)(B)(i)

**Penalty:** Not more than 20 years in prison and/or a fine of up to either $500,000 or twice the value of the property or funds involved in the transaction, whichever is greater  [18 U.S.C. § 1956(a)]
**Supervised Release:** Not more than 3 years [18 U.S.C. § 3583]
**Special Assessment**: $100 [18 U.S.C. § 3013]

### FORFEITURE ALLEGATIONS

**JEREMY WALENTY:**

### COUNT 1 – Conspiracy to Smuggle Goods into the United States – 18 U.S.C. §§ 371, 545

> **Penalty:** Not more than 5 years in prison and/or a $250,000 fine [18 U.S.C. § 371]
> **Supervised Release:** Not more than 3 years [18 U.S.C. § 3583]
> **Special Assessment**: $100 [18 U.S.C. § 3013]

### FORFEITURE ALLEGATION

**TAYLOR McLAREN:**

**COUNT 1 – Conspiracy to Smuggle Goods into the United States – 18 U.S.C. §§ 371, 545**

> **Penalty:** Not more than 5 years in prison and/or a $250,000 fine [18 U.S.C. § 371]
> **Supervised Release:** Not more than 3 years [18 U.S.C. § 3583]
> **Special Assessment**: $100 [18 U.S.C. § 3013]

**FORFEITURE ALLEGATION**

**JOSHUA FORD:**

### COUNT 1 – Conspiracy to Smuggle Goods into the United States – 18 U.S.C. §§ 371, 545

> **Penalty:** Not more than 5 years in prison and/or a $250,000 fine [18 U.S.C. § 371]
> **Supervised Release:** Not more than 3 years [18 U.S.C. § 3583]
> **Special Assessment**: $100 [18 U.S.C. § 3013]

### FORFEITURE ALLEGATION

Date:  March 1, 2022                    /s/Stephanie M. Carowan
                                        Stephanie M. Carowan


Submitted in accordance with Admin Order 17-MS-046